UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RICHARD PARKS CORROSION TECHNOLOGY, INC.,** | : | 10cv437 (WWE) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **PLAS-PAK INDUSTRIES, INC., V.O. BAKER CO., INC., THOMAS BAKER, JASON BAKER,** | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

In this action, plaintiff Richard Parks Corrosion Technology, Inc. ("RPCT") asserts claims of breach of contract and violation of the covenant of good faith and fair dealing against defendant Plas-Pak Industries, Inc. ("Plas-Pak"), tortious interference with the Plas-Pak License Agreement against defendants V.O. Baker Company, Thomas Baker and Jason Baker ("Baker Defendants"), and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") against all defendants. Defendant Plas-Pak filed a counterclaim against RPCT for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation; and V.O. Baker filed counterclaims of breach of contract, unjust enrichment and estoppel against RPCT.

The parties have filed cross motions for summary judgment. For the following reasons, RPCT's motion for summary judgment will be denied; Plas-Pak's motion for summary judgment will be granted and denied in part; and the Baker Defendants motion for summary judgment will be denied.

**I. BACKGROUND**

The parties have submitted statements of facts and supporting exhibits. The parties' submissions reflect that the following facts are not in dispute.

Plaintiff RPCT is a Virginia corporation and Richard Parks is its president and sole employee. RPCT is in the business of providing corrosion control engineering to the United States Military and private entities in the context of marine and industrial paints and coatings.

Defendant Plas-Pak is a Connecticut corporation that manufactures, markets, and sells a patented disposable plastic cartridge system that consumers fill with adhesives and paints.

Defendant V.O. Baker is an Ohio corporation that repackages industrial products into consumer-friendly packaging and distributes the repackaged products for manufacturers and other businesses. J. Baker and T. Baker are current officers and employees of V.O. Baker. V.O. Baker has had a long-standing business relationship with Plas-Pak for many years.

On June 1, 2004, Plas-Pak and RPCT entered into a license agreement, granting RPCT the exclusive right to market and sell Plas-Pak's paint cartridge system to the United States Navy and marine industry in exchange for RPCT's agreement to exclusively purchase the products for use in the United States Navy and marine markets.

The Plas-Pak License Agreement contained a clause requiring RPCT to use its best efforts to promote the use of the products. It also provided that the agreement "may be terminated before the expiration of the Term . . . upon mutual written agreement of RPCT, or upon a breach of a material term by RPCT that it fails to remedy or cure within one month after the receipt of written notice from Plas- Pak. In a sublicense agreement, V.O. Baker was named as the distributor of the Plas-Pak's paint

cartridge system.[1]   The sublicense agreement provided that V.O. Baker was the "the exclusive representative and exclusive distributor of the Products," that both RPCT and V.O. Baker "shall ... market and promote the use of the Products," and that RPCT received a royalty on V.O. Baker's sales.  Plas-Pak, RPCT and V.O. Baker referred to their business relationship as a partnership.

On December 19, 2005, the Plas-Pak License Agreement was expanded to grant RPCT the exclusive right to market and sell Plas-Pak's paint cartridge system to Chesterton Coatings for nuclear pipeline coatings.  On February 12, 2008, the Plas-Pak License Agreement was expanded to grant RPCT the exclusive right to market and sell Plas-Pak's cartridge systems to Sherwin Williams.  Plas-Pak made its paint cartridges and related products available to RPCT throughout the entire duration of the Plas-Pak License Agreement.

In October 2007, during a meeting between the parties, concern was expressed about Plas-Pak's low sales numbers and RPCT's marketing efforts.  Plas-Pak offered RPCT additional resources for marketing assistance.  However, RPCT did not take advantage of this offer.

In a March 6, 2008 email, Plas-Pak informed RPCT that it would terminate the License Agreement if $1,000,000 in sales was not generated.

On August 1, 2008, RPCT entered into a confidentiality agreement with Plas-Pak's competitor, Sulzer Mixpac North America.  The agreement stated that "Sulzer and RPCT are both interested in engaging in a business discussion and relationship

---

[1] V.O. Baker outsourced 90% of its filling of Plas-Pak's Cartridges to Adhesive Packaging Specialities ("APS").

concerning packaging and dispensing paints and coatings formulations and delivery equipments in the USA and worldwide applications. . . ."

On May 16, 2008, RPCT entered into a "Confidentiality and Teaming Agreement" with APS relating to RPCT's packaging efforts.  On September 4, 2008, RPCT entered into a development agreement with Wooster Brush Company for development of certain products.  RPCT included APS in its development, testing and demonstration of Wooster's technology.

In November 2008, RPCT initiated an audit of V.O. Baker's business records and requested that it disclose a customer's confidential pricing information during the process.

In February 2009, RPCT attended a demonstration to sell RPCT-Wooster developed products.

In March 2009, RPCT had discussions with Sulzer regarding the possibility of it becoming RPCT's cartridge supplier in the event that the relationship with Plas-Pak ended.  That March, the relationship between RPCT and V.O. Baker had become strained to the point that V.O. Baker requested Plas-Pak's intervention.

On March 23, 2009, representatives from V.O. Baker and Plas-Pak met to discuss how RPCT could be encouraged to communicate about the sales program.

By April 3, 2009, RPCT sought to engage Sulzer as its paint cartridge supplier in certain markets not covered by the exclusivity provision of the Plas-Pak License Agreement.

On April 9, 2009, Charles Frey, CEO of Plas-Pak wrote to Parks, expressing his concern regarding poor sales performance and alienation of V.O. Baker.  He wrote: "It's clear that, given your efforts at developing your salt meter business and efforts in areas

outside our agreement, that Parks Technologies did not use 'its best efforts and devote such time as is reasonably necessary' to advance the program. I consider this a material breach of our agreement." He stated further that "our agreement is terminated."

On June 10, 2009, V.O. Baker sent RPCT a letter stating that it considered its subLicense agreement to be terminated.

Between 2004 through 2008 during the first four years of the paint cartridge program, RPCT did not make a profit under the Plas-Pak License Agreement. RPCT claims that it finally reached a break-even point near the time that the Plas-Pak License Agreement was terminated in April 2009.

On October 5, 2010, eighteen months after the alleged termination of the Plas-Pak License Agreement, RPCT and Sulzer entered into a consulting agreement ("Independent Consulting Agreement") under which Sulzer became RPCT's exclusive paint cartridge supplier to the United State Navy and marine industry.

RPCT's marketing and selling Sulzer's paint cartridge system under the Independent Consulting Agreement competes with Plas-Pak's efforts to sell its paint cartridge system.

On July 15, 2011, RPCT and Sulzer entered into an asset purchase, option and license agreement ("Asset Purchase Agreement") whereby RPCT sold assets and granted licenses and options to purchase to Sulzer for the purchase price of $320,000 plus royalties in accordance with the terms thereof. RPCT granted Sulzer the exclusive right to use, sell and sublicense a patent held by RPCT known as "the 170 Parks Patent." It also granted Sulzer the right to purchase the patent within one year after resolution of this lawsuit and sold Sulzer another patent known as "the 384 Parks

Patent."

On March 22, 2010, RPCT filed the instant complaint, seeking to recover lost profits that it allegedly suffered as a result of the termination of the Plas-Pak License Agreement.

## II.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  <u>American International Group, Inc. v. London American International Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp.</u>, 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  <u>Anderson</u>, 477 U.S. at 249.  The same standard is applicable on cross motions for summary judgment.

A. <u>Motion for Summary Judgment by RPCT</u>

RPCT has filed a motion for partial summary judgment on its breach of contract claim against Plas-Pak and on Plas-Pak's counterclaim of breach of the covenant of good faith fair dealing and negligent misrepresentation.

1. <u>Breach of Contract and the Covenant of Good Faith and Fair Dealing</u>

RPCT maintains that the Court should enter summary judgment in its favor on the breach of contract and breach of the covenant of good faith and fair dealing claims because Plas-Pak failed to comply with the notice provision prior to termination. <u>See Devan Motors of Fairfield, Inc. v. Infiniti Div. Of Nissan N. Am. Inc.</u>, 579 F. Supp. 2d 294, 313 (D. Conn. 2008) (breach of covenant of good faith and fair dealing claim is derivative of a breach of an underlying contract).

It is undisputed that Plas-Pak did notify RPCT in March 6, 2008 that it would terminate the license agreement if sales performance did not reach $1,000,000. It remains an issue of fact for a jury to determine whether this communication constitutes adequate notice and whether Plas-Pak complied with the contract terms. The Court will deny the motion for summary judgment on these claims.

2. <u>Plas-Pak's Negligent Misrepresentation</u>

RPCT asserts that the Plas-Pak's counterclaim of negligent misrepresentation is legally insufficient due to the merger clause within the License Agreement. In its negligent misrepresentation claim, Plas-Pak claims that it was induced to enter into the license agreement by RPCT's misrepresentation that it would generate $339 million in annual sales. The merger clause does not prevent Plas-Pak from asserting its negligent misrepresentation count because Plas-Pak's claim is directed at its

7

inducement to enter the contract rather than altering the terms of the contract. RPCT's motion for summary judgment will be denied on this counterclaim.

### B. Motion for Summary Judgment by Plas-Pak Against RPCT

Plas-Plak argues that summary judgment should enter on RPCT's claims because RPCT cannot prove damages. Specifically, Plas-Pak asserts that RPCT cannot prove lost profits, which it has alleged as its sole basis for damages.

#### 1. Contract Claim

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." American Express Centurion Bank v. Head, 115 Conn.App. 10, 15–16 (2009).

Lost profits are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty. Beverly Hills Concepts, Inc. v. Schatz and Schatz, 247 Conn. 48, 75 (1998). Lost profits represent calculations of "net profits," which are "defined as the gross amount that would have been received pursuant to the business less the cost of running the business." New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc., 2002 WL 229900, *13 (D. Conn.). Lost profits may be calculated by extrapolating from past profits, although a plaintiff cannot recover for the mere potential of profitability. Beverly Hills Concepts, 247 Conn. at 13.

Here, RPCT's damages expert provided a "lost profit" calculation that considered revenue but did not account for the expenses incurred by RPCT. RPCT does not dispute that its expert did not have access to RPCT's expenses, and RPCT has not provided any further evidence concerning its lost profits.

RPCT counters that its damages should be based upon gross profits rather than

net profits.  In Retepromac Repesentaciaones Tecnicas v. Ensign Bickford, 2004 WL 722231, *5 (D. Conn.), this Court noted that "[a]n award of total profits need not be reduced by expenses if the evidence tends to show that the plaintiff would have incurred no additional expenses in making the future sales."   It is undisputed that RPCT was not profitable during the first four years, although it asserts that it was profitable three months prior to the license termination.   RPCT maintains that it would have made profits without incurring expenses because it had earned the right to collect royalty payments from existing customer sales.  Nevertheless, RPCT's claim is not supported by evidence and its assertion of profitability without the incurrence of expenses remains speculation. The Court finds that RPCT has not demonstrated that it has sustained lost profits as calculated according to net profits, and therefore, summary judgment is appropriate on the claims of breach of contract and of the covenant of good faith and fair dealing.  See MM Global Svcs., Inc. v. Dow Chemical, 283 F. Supp. 2d 689, 703 (D. Conn. 2003) (implied covenant of good faith and fair dealing is derivative of breach of contract claim).

      2.     CUTPA

Relevant to RPCT's CUTPA claim, the standard for proof of CUTPA damages differs from that of the contract claim.  RPCT asserts that it need only prove an ascertainable loss and may be entitled to recover nominal damages.  To recover damages under CUTPA, a party must meet two threshold requirements:  First, the party must establish that the conduct at issue constitutes an unfair or deceptive trade practice; and second, the party must demonstrate that it suffered an actual loss. Bednaz v. New England Stampcrete, Inc., 2011 WL 6989865 (Conn. Super.); Hees v. Burke Construction, Inc., 290 Conn. 1, 14 (2009).  For purposes of CUTPA, the extent

of the loss need not always be proven with specificity but a party must show that the CUTPA violation produced some loss.  <u>Nationwide Mut. Ins. Co. v. Mortensen</u>, 606 F.3d 22, 30 (2010).  In certain circumstances, nominal damages may be awarded on a CUTPA claim where a party has demonstrated liability but is unable to prove the amount of damages incurred.  <u>See</u> <u>Whitaker v. Taylor</u>, 99 Conn.App. 719, 733 (2007) (holding that nominal damages were appropriate where plaintiff had obtained a default judgment on its CUTPA claim).  In light of this differing standard relevant to proof of an actual loss, the Court will deny the motion for summary judgment on the CUTPA claim.

Plas-Pak's remaining argument to preclude damages beyond the effective date of the Independent Consulting Agreement is directed at limiting RPCT's contractual damages.  Accordingly, the Court need not consider this argument relative to the remaining CUTPA claim.

    C.    <u>Motion for Summary Judgment by V.O. Baker, Jason Baker, Thomas Baker Against RPCT</u>

The Baker Defendants argue that RPCT cannot prove causation on its claims of tortious interference with contract or that the Baker Defendants acted unfairly and deceptively in so doing on its claim of a CUTPA violation.

    1.    <u>Tortious Interference</u>

In its brief, RPCT explains that "it is the theory of the plaintiff's case that Baker Company poisoned RPCT's relationship with Plas-Pak by making misrepresentations to Plas-Pak about RPCT's performance."

In order to prove a claim for tortious interference with contractual relations, a plaintiff must establish "(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere

with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 212–13 (2000). Not every act that disturbs a contract or business expectancy is actionable. Jones v. O'Connell, 189 Conn. 648, 660 (1983). A plaintiff must prove that the defendant's conduct involved fraud, misrepresentation, intimidation, molestation or that the defendant acted maliciously. Robert S. Weiss and Assocs., Inc. v. Wiederlight, 208 Conn. 525, 536 (1988).

RPCT has submitted as part of its evidence emails sent to individuals at Plas-Pak, in which Jason Baker made disparaging remarks about RPCT and Parks, including, "Richard has COMPLETELY lost it," and "I think it is important to get across the fact that he is actually harming the program, as we spend more time defending ourselves against Richard than selling cartridges." Thereafter, Peter Kuzyk at Plas-Pak called for a meeting with RPCT and V.O. Baker, noting that email traffic indicated "strains on our business relationship."

The Baker Defendants submit that their communications with Plas-Pak are privileged because they constitute communications between parties with common business interests. In asserting this privilege, the Baker Defendants rely upon Madero v. People's Bank, 2005 WL 737044, *4 (Conn. Super. Feb. 27. 2005), which explained that the common interest privilege is defeated if the defendant acts with improper motive or if the scope or manner of publication exceed what is reasonably necessary to further its interest.

RPCT's evidence may not prevail but it does raise a question of fact as to causation and whether the Baker Defendants acted with an improper motive. Individuals from Plas-Pak have stated that V.O. Baker did not influence the decision to

terminate the license agreement.  However, the Court cannot determine issues of credibility on summary judgment.  Thus, construing the inferences of fact in favor of the non-moving party, the Court must deny summary judgment on the basis of causation.

However, in light of this Court's ruling on RPCT's contract claim, the Court will allow the Baker Defendants to submit a motion for summary judgment on the issue of whether RPCT can prove that a loss was caused by the alleged conduct.

### 2. CUTPA

The Baker Defendants maintain that plaintiff cannot prove an unfair or deceptive act or that such asserted unfair or deceptive act caused RPCT harm.

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive:  "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise —  whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).  In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree.  Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).

As previously discussed, this Court found that RPCT's evidence raises an

inference that the Baker Defendants tortiously influenced Plas-Pak to terminate the licensing agreement. Accordingly, the Court will deny the Baker Defendants' motion for summary judgment respecting CUTPA.

### III.  CONCLUSION

For the foregoing reasons, RPCT's motion for summary judgment [doc. #80] is DENIED; Plas-Pak's motion for summary judgment [doc. #77] is GRANTED as to the contract and breach of the covenant of good faith claim but denied as to the CUTPA claim; and the Baker Defendants' motion for summary judgment [doc. #78] is DENIED.

Within 15 days of this ruling's filing date, the parties are instructed to inform the Court whether they would engage in a settlement conference with a magistrate judge. If a settlement conference is not requested, the Baker Defendants may file a motion for summary judgment on the tortious interference claim within 45 days of this ruling's filing date.

Dated this _26th__ day of September, 2012 in Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton,
Senior United States District Judge