UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD PARKS CORROSION TECH INC., :
Plaintiff,                        :
                                  :
v.                                :          3:10-cv-00437-WWE
                                  :
PLAS-PAK INDUS INC., VO BAKER CO.  :
INC., THOMAS BAKER, JASON BAKER,   :
Defendants.                       :

## MEMORANDUM OF DECISION ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Richard Parks Corrosion Technology Inc. ("RPCT") asserts claims of violation of the Connecticut Unfair Trade Practices Act ("CUTPA") against all defendants. Defendant Plas-Pak filed a counterclaim against plaintiff for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and CUTPA violation (Count V). Plas-Pak has moved for summary judgment on plaintiff's CUTPA claim and on the above three counts it asserted against plaintiff. For the following reasons, defendant's motion will be denied.

## BACKGROUND

The parties have submitted statements of facts and supporting exhibits. The parties' submissions reflect that the following facts are not in dispute.

Plaintiff RPCT is a Virginia corporation and Richard Parks is its president and sole employee. RPCT is in the business of providing corrosion control engineering to the United States Military and private entities in the context of marine and industrial paints and coatings.

Defendant Plas-Pak is a Connecticut corporation that manufactures, markets, and sells a patented disposable plastic cartridge system that consumers fill with adhesives and paints.

Defendant V.O. Baker is an Ohio corporation that repackages industrial products into

consumer-friendly packaging and distributes the repackaged products for manufacturers and other businesses.  J. Baker and T. Baker are current officers and employees of V.O. Baker.  V.O. Baker has had a long-standing business relationship with Plas-Pak for many years.

On June 1, 2004, Plas-Pak and RPCT entered into a license agreement, granting RPCT the exclusive right to market and sell Plas-Pak's paint cartridge system to the United States Navy and marine industry in exchange for RPCT's agreement to exclusively purchase the products for use in the United States Navy and marine markets.

The Plas-Pak License Agreement contained a clause requiring RPCT to use its best efforts to promote the use of the products.  It also provided that the agreement "may be terminated before the expiration of the Term . . . upon mutual written agreement of RPCT, or upon a breach of a material term by RPCT that it fails to remedy or cure within one month after the receipt of written notice from Plas- Pak."  In a sublicense agreement,  V.O. Baker was named as the distributor of the Plas-Pak's paint cartridge system.[1]   The sublicense agreement provided that V.O. Baker was the "the exclusive representative and exclusive distributor of the Products," that both RPCT and V.O. Baker "shall ... market and promote the use of the Products," and that RPCT received a royalty on V.O. Baker's sales.  Plas-Pak, RPCT and V.O. Baker referred to their business relationship as a partnership.

On December 19, 2005, the Plas-Pak License Agreement was expanded to grant RPCT the exclusive right to market and sell Plas-Pak's paint cartridge system to Chesterton Coatings for nuclear pipeline coatings.  On February 12, 2008, the Plas-Pak License Agreement was

---

[1]V.O. Baker outsourced 90% of its filling of Plas-Pak's Cartridges to Adhesive Packaging Specialities ("APS").

expanded to grant RPCT the exclusive right to market and sell Plas-Pak's cartridge systems to Sherwin Williams.  Plas-Pak made its paint cartridges and related products available to RPCT throughout the entire duration of the Plas-Pak License Agreement.

In October 2007, during a meeting between the parties, concern was expressed about Plas-Pak's low sales numbers and RPCT's marketing efforts.  Plas-Pak offered RPCT additional resources for marketing assistance.  However, RPCT did not take advantage of this offer.

In a March 6, 2008 email, Plas-Pak informed RPCT that it would terminate the License Agreement if $1,000,000 in sales was not generated.

On August 1, 2008, RPCT entered into a confidentiality agreement with Plas-Pak's competitor, Sulzer Mixpac North America.  The agreement stated that "Sulzer and RPCT are both interested in engaging in a business discussion and relationship concerning packaging and dispensing paints and coatings formulations and delivery equipments in the USA and worldwide applications. . . ."

On May 16, 2008, RPCT entered into a "Confidentiality and Teaming Agreement" with APS relating to RPCT's packaging efforts.  On September 4, 2008, RPCT entered into a development agreement with Wooster Brush Company for development of certain products. RPCT included APS in its development, testing and demonstration of Wooster's technology.

In November 2008, RPCT initiated an audit of V.O. Baker's business records and requested that it disclose a customer's confidential pricing information during the process.

In February 2009, RPCT attended a demonstration to sell RPCT-Wooster developed products.

In March 2009, RPCT had discussions with Sulzer regarding the possibility of it

3

becoming RPCT's cartridge supplier in the event that the relationship with Plas-Pak ended.  That March, the relationship between RPCT and V.O. Baker had become strained to the point that V.O. Baker requested Plas-Pak's intervention.

On March 23, 2009, representatives from V.O. Baker and Plas-Pak met to discuss how RPCT could be encouraged to communicate about the sales program.

By April 3, 2009, RPCT sought to engage Sulzer as its paint cartridge supplier in certain markets not covered by the exclusivity provision of the Plas-Pak License Agreement.

On April 9, 2009, Charles Frey, CEO of Plas-Pak, wrote to Parks, expressing his concern regarding poor sales performance and alienation of V.O. Baker.  He wrote: "It's clear that, given your efforts at developing your salt meter business and efforts in areas outside our agreement, that Parks Technologies did not use 'its best efforts and devote such time as is reasonably necessary' to advance the program.  I consider this a material breach of our agreement."  He stated further that "our agreement is terminated."

On June 10, 2009, V.O. Baker sent RPCT a letter stating that it considered its sub-license agreement to be terminated.

Between 2004 through 2008 during the first four years of the paint cartridge program, RPCT did not make a profit under the Plas-Pak License Agreement.  RPCT claims that it finally reached a break-even point near the time that the Plas-Pak License Agreement was terminated in April 2009.

On October 5, 2010, eighteen months after the alleged termination of the Plas-Pak License Agreement, RPCT and Sulzer entered into a consulting agreement ("Independent Consulting Agreement") under which Sulzer became RPCT's exclusive paint cartridge supplier

to the United State Navy and marine industry.

RPCT's marketing and selling Sulzer's paint cartridge system under the Independent Consulting Agreement competes with Plas-Pak's efforts to sell its paint cartridge system.

On July 15, 2011, RPCT and Sulzer entered into an asset purchase, option and license agreement ("Asset Purchase Agreement") whereby RPCT sold assets and granted licenses and options to purchase to Sulzer for the purchase price of $320,000 plus royalties in accordance with the terms thereof.  RPCT granted Sulzer the exclusive right to use, sell and sublicense a patent held by RPCT known as "the 170 Parks Patent."  It also granted Sulzer the right to purchase the patent within one year after resolution of this lawsuit and sold Sulzer another patent known as "the 384 Parks Patent."

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of

its case with respect to which it has the burden of proof, then summary judgment is appropriate.

Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely

colorable," legally sufficient opposition to the motion for summary judgment is not met.

Anderson, 477 U.S. at 249.

**Plaintiff's CUTPA Claim**

Defendant Plas-Pak[2] argues that plaintiff cannot prove it suffered an ascertainable loss, as

required by CUTPA.  Defendant contends that plaintiff has failed to demonstrate any loss or

injury.

> The ascertainable loss requirement [of § 42–110g] is a threshold barrier which limits
> the class of persons who may bring a CUTPA action seeking either actual damages
> or equitable relief.... Thus, to be entitled to any relief under CUTPA, a plaintiff must
> first prove that he has suffered an ascertainable loss due to a CUTPA violation.
> CUTPA, however, is not limited to providing redress only for consumers who can
> put a precise dollars and cents figure on their loss as the ascertainable loss provision
> do[es] not require a plaintiff to prove a specific amount of actual damages in order
> to make out a prima facie case. Rather, as we explained in Hinchliffe, [d]amage ...
> is only a species of loss; hence [t]he term 'loss' necessarily encompasses a broader
> meaning than the term 'damage.' Accordingly, this court previously has concluded
> that, for purposes of § 42–110g, an ascertainable loss is a deprivation, detriment [or]
> injury that is capable of being discovered, observed or established.... [A] loss is
> ascertainable if it is measurable even though the precise amount of the loss is not
> known.... Under CUTPA, there is no need to allege or prove the amount of the actual
> loss.

Marinos v. Poirot, 308 Conn. 706, 866 (2013).

Here, plaintiff contends that defendant's wrongful conduct caused plaintiff to lose its

license agreements with defendant, Baker, and numerous other paint companies.  Such a loss is

capable of being established regardless of whether plaintiff can prove the value of the actual loss.

See Johnson Elec. Co., Inc. v. Salce Contracting Assoc., Inc., 72 Conn. App. 342, 355 (Conn.

---

[2] All references to defendant are to Plas-Pak.

App. Ct. 2002) ("On its face, the loss of a contract is an ascertainable loss.").

Defendant argues that plaintiff failed to label the loss of the license agreements as "ascertainable losses" in the complaint and that, therefore, the Court should reject plaintiff's contention that its ascertainable loss is anything other than its alleged lost profits.  However, plaintiff's CUTPA claim included allegations that defendant's actions caused plaintiff to lose its licenses.  Compl. ¶¶ 53, 67, 69 (See ¶ 99 ("Plaintiff repeats, reiterates and restates the allegations contained in Paragraphs 1-98.")).  CUTPA injury need not be labeled "ascertainable loss" in the complaint to qualify as such.  The alleged loss of the license agreements is capable of being discovered, observed, and established.  See Service Road Corp. v. Quinn, 241 Conn. 630, 643–44 (1997) (concluding that "in the business context, a plaintiff asserting a CUTPA claim may satisfy the ascertainable loss requirement of § 42–110g by establishing, through a reasonable inference, or otherwise, that the defendant's unfair trade practice has caused the plaintiff to lose potential customers" and that "[a] loss of prospective customers constitutes a deprivation, detriment [or] injury that is capable of being discovered, observed or established.").  Accordingly, summary judgment will be denied as to plaintiff's CUTPA claim.

**Plas-Pak's Counterclaims**

Defendant argues that plaintiff materially breached and abandoned the Plas-Pak License Agreement (Count I) by soliciting defendant's competitor, Sulzer, and entering into an agreement with Sulzer to replace Plas-Pak as its paint cartridge supplier during the term of the Plas-Pak License Agreement.  In addition, defendant contends that plaintiff deceived it and acted in bad faith with a dishonest purpose.  Defendant asserts that such conduct violates the "best efforts" requirement and exclusivity provisions of the Plas-Pak License Agreement, and constitutes a

breach of the implied covenant of good faith and fair dealing (Count II) and violation of CUTPA (Count V).

The elements of a breach of contract action are: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. American Express Centurion Bank v. Head, 115 Conn. App. 10, 15-16 (2009).

The Plas-Pak License Agreement required plaintiff to "use its best efforts and devote such time as is reasonably necessary to promote the use of the Products in the application of coatings by and for the Markets" and to purchase "all of its disposable Products and dispensing guns for the application of coatings by or for the Markets only from Plas-Pak."

Defendant contends that plaintiff did not use best efforts to promote the use of defendant's products, as evidenced by plaintiff's pre-termination discussions with Sulzer about supplying similar paint cartridge products.  Likewise, defendant argues that plaintiff's discussions with Sulzer violated the exclusivity provisions of the Plas-Pak License Agreement.

The Court previously ruled that defendant may have failed in its performance of the parties' agreement (e.g., by impermissibly threatening to terminate the contract by email on March 6, 2008, or by attempting to terminate the Agreement without proper notice on April 9, 2009).  While plaintiff's contract-based claims were rejected for failure to establish damages, the Court did not determine whether defendant complied with the contract terms [Doc. # 130].  More importantly, issues of fact remain in dispute regarding (1) whether plaintiff used its best efforts as required and (2) whether plaintiff failed to purchase "all of its disposable Products and dispensing guns for the application of coatings by or for the Markets only from Plas-Pak" *prior* to termination of the contract.

8

Similarly, issues of fact remain in dispute regarding whether plaintiff acted in bad faith or violated CUTPA. Indeed, plaintiff's own CUTPA claim against defendant has survived summary judgment. Credibility determinations will significantly aid resolution of the parties' opposing claims of unfair and deceptive trade practices, as well as defendant's claim of bad faith. Accordingly, defendant's motion for summary judgment on its own breach of contract, bad faith, and CUTPA claims will be denied.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [Doc. # 153] is DENIED.

Dated this 26th day of March, 2014, at Bridgeport, Connecticut.


_____/s/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE