UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RICHARD PARKS CORROSION
TECHNOLOGY, INC.,
       Plaintiff,

      v.                                                              CASE NO. 3:10-cv-437(VAB)

PLAS-PAK INDUSTRIES, INC., V.O.,
BAKER CO., INC., THOMAS BAKER,
and JASON BAKER,
       Defendants.

## RULING ON V.O. BAKER COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

This action arises out of the termination of a business relationship between Plaintiff, Richard Parks Corrosion Technology, Inc. ("RPCT"), and Defendants Plas-Pak Industries, Inc. ("Plas-Pak") as well as V.O. Baker Company, Inc. ("V.O. Baker"), Thomas Baker, and Jason Baker (collectively the "Baker Defendants"), involving the marketing and distribution of a paint cartridge system to the United States Navy and marine industry.

RPCT's alleges[1] a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.*, by all Defendants and an unjust

---

[1] In its initial Complaint, RPCT also sought damages for breach of contract, tortious interference with the Plas-Pak license agreement by the Baker Defendants, and violation of the covenant of good faith and fair dealing. Compl. at Counts One, Two, and Three, ¶¶ 54-98, ECF No. 1.  These claims were dismissed at summary judgment because the Court found that RPCT could not prove damages to a reasonable certainty. Memo. of Decision on Cross Mots. For Summ. J. 9, ECF No. 130 (dismissing the breach of contract and the covenant of good faith and fair dealing claims); Order Granting Suppl. Mot. for Summ. J., ECF No. 146 (dismissing the tortious inference of contract claim against the Baker Defendants).  After all summary judgment motions were decided and three motions *in limine* were filed, ECF Nos. 180, 181, and 194, RPCT amended its Complaint and added the claim for unjust enrichment.  Am. Compl. ¶¶104-05, ECF No. 207.

1

enrichment claim against V.O. Baker only. Am. Compl. at Counts Four and Five, ¶¶99-105, ECF No. 207. Plas-Pak asserts five counterclaims against RPCT for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent misrepresentation, and violations of CUTPA. Plas-Pak's Am. Countercl. at Counts One-Five, ¶¶32-67, ECF No. 129. V.O. Baker also asserts counterclaims against RPCT for breach of contract, unjust enrichment, estoppel, unfair competition, and violations of CUTPA. V.O. Baker's Am. Countercl. at Counts One-Five, ¶¶69-91, ECF No. 212.

Before the Court is a Motion for Summary Judgment, ECF No. 225, filed by V.O. Baker seeking dismissal of RPCT's unjust enrichment claim. The Court provided V.O. Baker leave to file this Motion after oral argument on the pending Motions *in Limine*, ECF Nos. 180, 181, and 194. Scheduling Order, ECF No. 220. For the reasons that follow, V.O. Baker's motion, ECF No. 225, is **GRANTED**.

I.  FACTS[2]

RPCT provides "corrosion control engineering to the United States Military and private entities in the context of marine and industrial paints and coatings." Memo. of Decision on Cross Mots. For Summ. J. 2, ECF No. 130. Plas-Pak "manufactures, markets, and sells a patented disposable plastic cartridge system that consumers fill with adhesives and paints." *Id.* V.O. Baker "repackages industrial products… and distributes the repackaged products for manufacturers

---

[2] These facts are based on a review of the Court's earlier summary judgment ruling, ECF No. 130, the parties' pleadings, Local Rule 56(a) Statements, and any responses, as well as exhibits filed by both parties. Unless noted otherwise, facts discussed in this section are undisputed or the opposing party has not pointed to any contradictory evidence in the record.

and other businesses" and has a longstanding business relationship with Plas-Pak. *Id.* The individual Defendants in this case, J. Baker and T. Baker, are "current officers and employees of V.O. Baker." *Id.*

On June 1, 2004, RPCT entered into an agreement with Plas-Pak that granted RPCT the "exclusive right to market and sell a paint cartridge system to the United States Navy and marine industry." *Id.* Under this agreement, RPCT had an obligation to use its "best efforts" to promote and sell the paint system. *Id.* During its term, RPCT and Plas-Pak expanded their agreement to cover additional markets on two occasions. *Id.* at 3.

Incident to the Plas-Pak agreement, RPCT also entered into a sub-license agreement on January 1, 2005, which named V.O. Baker the exclusive distributor of Plas-Pak's paint cartridge system. *Id.* at 2-3; V.O. Baker's Local Rule 56(a)1 Stmt. ¶5, ECF No. 231.[3] RPCT first contacted a representative of V.O. Baker in late 2003 about the possibility of distributing Plas-Pak's paint cartridge system. Baker Defs.' Local Rule 56(a)1 Stmt. ¶11, ECF No. 85-1.[4] In performing this agreement, V.O. Baker sold the paint cartridge system to "end-users, such as shipyards, the military, and private and individual contractors" as well as paint companies, "which then resold them to end users." V.O. Baker's Local Rule 56(a)1 Stmt. ¶ 7, ECF No. 231. Under this sub-license, RPCT received a royalty

---

[3] V.O. Baker "outsourced 90% of its filling of Plas-Pak's [c]artridges to Adhesive Packaging Specialities." Memo. of Decision on Cross Mots. For Summ. J. 3 n.1, ECF No. 130.
[4] The Court refers to the parties' earlier summary judgment Local Rule 56(a) Statements and exhibits because they explicitly incorporated them into their filings on the instant summary judgment motion. *See* V.O. Baker's Local Rule 56(a)1 Stmt. at 1, ECF No. 231; Pl.'s Local Rule 56(a)2 Stmt. at 1, ECF No. 238-1.

of 50% of the profit from V.O. Baker's sales.  Parks Decl. ¶16, ECF No. 238-2; *see* Parks Dep., Ex. 7, License Agreement, ECF No. 85-1.

Beginning in October 2007, Plas-Pak began expressing concerns about low sales numbers and RPCTs marketing efforts.  Memo. of Decision on Cross Mots. For Summ. J. 3, ECF No. 130.   Ultimately, on April 9, 2009, Charles Frey, CEO of Plas-Pak, sent an e-mail to Richard Parks, president of RPCT, indicating that "our agreement is terminated."  *Id.* at 4-5; Parks Decl. ¶1, ECF No. 238-2.  A few months later, on June 10, 2009, V.O. Baker sent RPCT a letter indicating that it considered its sub-license agreement terminated.  Memo. of Decision on Cross Mots. For Summ. J. 5, ECF No. 130.  On October 5, 2010, RPCT entered into a consulting agreement under which Sulzer Mixpac North America ("Sulzer"), one of Plas-Pak's competitors, became RPCT's exclusive paint cartridge supplier to the United States Navy and marine industry.  *Id.* at 3, 5.  RPCT's efforts to market and sell Sulzer's paint cartridge system competes with Plas-Pak's efforts to sell its paint cartridge system.  *Id.* at 5.

After the termination of the relationship between Plas-Pak and RPCT, V.O. Baker has continued to act as the distributor of Plas-Pak's paint cartridge system.  Pl.'s Disputed Issues of Material Fact ¶28, ECF No. 110-1; Pl.'s Disputed Issues of Material Fact ¶1, ECF No. 238-1; Parks Decl. ¶23(h), ECF No. 238-2.  Because its sublicense agreement with RPCT has terminated, V.O. Baker no longer pays the royalty to RPCT due under the original agreement.  *Id.*

## II.     STANDARD

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party carries the burden of demonstrating that there is no genuine material dispute of fact by citing to "particular parts of materials in the record" or by "showing that the materials cited do not establish the [ ] of presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citations omitted).   "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and material if the substantive law governing the case identifies those facts as material.  *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (citation and internal quotation marks omitted); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities, including credibility questions, and draw all inferences from the record as a whole in favor of the non-moving party.  *Kayton v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III. DISCUSSION

"'[A] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.'" *Gagne v. Vaccaro,* 255 Conn. 390, 408 (2001) (citation omitted). In analyzing a claim of unjust enrichment, the Court must "'examine the circumstances and the conduct of the parties'" and determine "'what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable.'" *Town of New Hartford v. Conn. Res. Recovery Auth.,* 291 Conn. 433, 451 (2009) (citation omitted).

To survive a summary judgment motion on its unjust enrichment claim, RPCT must show that a genuine question of material fact exists with respect to the following elements: "'(1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff's detriment.'" *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.,* 231 Conn. 276, 283 (1994) (citation omitted).

RPCT argues that it has met this burden, because V.O. Baker has not paid for and continues to benefit from work RPCT did under its contracts with Plas-Pak and V.O. Baker. *See* Parks Decl. ¶¶22-23, ECF No. 238-2; Opp. Br. 2-3, 4-5, ECF No. 238 ("[T]he services and the expertise which RPCT contributed to the paint program continue to benefit Baker Company today."); Pl.'s Disputed Issues of Material Fact ¶1, ECF No. 238-1. Richard Parks, RPCT's president, indicates that RPCT was the one who "developed the [unique] concept for the

paint cartridge program" and that RPCT was "instrumental" in selecting V.O. Baker for its distribution. Parks Decl. ¶¶1, 23(a)-(b), (g), ECF No. 238-2. RPCT also argues that the value it added to V.O. Baker's current business includes the work it did to develop the infrastructure for the paint distribution program as well as its ideas for future expansion[5] and its contacts with manufacturers of industrial paints as well as in the military, marine, and naval industries. Opp. Br. 4-5, ECF No. 238; Parks Decl. ¶¶22-23, ECF No. 238-2.

More specifically, Mr. Parks notes that prior to contact with his company, V.O. Baker "had no experience with industrial paints in marine and military applications… nor with the approval and requisition procedures for industrial paints utilized by the U.S. military." Parks Decl. ¶¶19-20, ECF No. 238-2. He explains that to do business with the United States Navy and military, one must have knowledge of the technical needs they have as well as the types of approvals required. *Id.* ¶¶12-14. In fulfilling its obligations under its contract with Plas-Pak, RPCT contends that it obtained the required "technical approvals" that enable V.O. Baker to sell the paint cartridge system in certain markets today. *Id.* ¶23(c). In performing this role, RPCT also argues that it provided an "extensive technical education [ ] in the field of marine and industrial paints [and] government approvals and requirements." *Id.* ¶23(d). Mr. Parks avers that V.O. Baker sells to customers that RPCT cultivated as clients and benefits from supply and exclusivity agreements that RPCT negotiated. *Id.* ¶¶22, 23(f). Thus, V.O. Baker enjoys an "established position" due to RPCT's efforts, which "makes it

---

[5] Mr. Parks claims that RPCT identified additional markets for expansion, into which V.O. Baker has expanded. Parks Decl. ¶23(e), ECF No. 238-2.

7

more difficult for any competitor to try to enter the paint cartridge market." *Id.* ¶23(g).[6]

According to RPCT, it is entitled to recover damages from V.O. Baker under an unjust enrichment theory because the existence of a valid, enforceable written contract is not a bar to recovery under this legal theory where a party has opportunistically breached that agreement. Opp. Br. 5-6, ECF No. 238. In its view, the law of restitution is evolving, and it cites to a number of provisions from the Restatement (Third) of Restitution and Unjust Enrichment (2011) that it claims support that position. *Id.* at 6-12. RPCT points to no Connecticut case law providing the relief it requests in an analogous situation; instead, it relies on precedent from Massachusetts. *Id.* at 10-11 (citing *Nat'l Merchandising Corp. v. Leyden,* 370 Mass. 425 (1976)).

The Court disagrees with RPCT's articulation of the law of unjust enrichment. Generally, litigants are precluded from asserting an "unjust enrichment" claim based on subject matter governed by an express contract. *See Meaney v. Conn. Hospital Assoc., Inc.,* 250 Conn. 500, 517-18 (1999) ("'It is often said that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter.'") (citation omitted); *Burns v. Koellmer,* 11 Conn. App. 375, 385 (Conn. App. Ct. 1987) ("Unjust enrichment and quantum meruit are forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties.")

---

[6] In evaluating V.O. Baker's Motion for Summary Judgment, the Court credits RPCT's assertions about the benefits it claims to have conferred on V.O. Baker. *See Kayton*, 609 F.3d at 546.

(citations omitted); Restatement (Third) of Restitution and Unjust Enrichment, § 2, cmt. c (2011) ("Restitution is [ ] subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach."); *see also Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, No. 13 Civ. 1582(PAE), 2015 WL 4191419, at *8 n.10 (S.D.N.Y. July 10, 2015) (surveying the law of a number of states, including Connecticut, on this issue); *see also Alstom Power, Inc. v. Schwing Am., Inc.*, Civil No. 3:04cv1311(JBA), 2006 WL 2642412, at *5 (D. Conn. Sept. 14, 2006) ("'[L]ack of a remedy under [a] contract is a precondition for recovery based upon unjust enrichment.'") (quoting *Gagne*, 255 Conn. at 401).

To hold otherwise would inappropriately disrupt the balance struck by parties to contracts. *See Total Recycling Servs. Of Conn., Inc. v. Conn. Oil Recycling Servs., LLC,* 114 Conn. App. 671, 678-79 (Conn. App. Ct. 2009) ("[A] party that has made a contract with another cannot simply disregard the contract and claim restitution from the other party for performance rendered under the contract.") (quoting 1 E. Farnsworth, Contracts (3d Ed. 2004) §2.20, pp. 191-92). To be clear, the existence of a contract "does not preclude equitable relief which is not inconsistent with the contract," meaning that "'when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice.'" *Rent-A-PC, Inc. v. Rental Mgmt., Inc.,* 96 Conn. App. 600, 605-06 (Conn. App. Ct. 2006) (citation omitted); *Town of New Hartford v. Conn. Resources Recovery Auth.,* 291 Conn. 433, 455 (2009) (citation

omitted). RPCT, however, must show both how the relief it seeks is not covered directly by its contract with V.O. Baker and that a genuine question of material fact exists with respect to all elements of its unjust enrichment claim. It has failed to do either.

While RPCT may be correct that certain benefits it conferred are still enjoyed by V.O. Baker today, those benefits were conferred during the life of the contracts between RPCT and Plas-Pak and RPCT and V.O. Baker. RPCT had a contractual obligation to confer those benefits, in that it was required to use its "best efforts" to sell the paint cartridge system.[7] V.O. Baker provided consideration for those benefits, which RPCT negotiated as 50% of its profits from sales. Because the benefits were conferred while the contracts were still operative, and indeed made up part of RPCT's performance obligations, they were not unjustly retained and, therefore, cannot be recovered in an unjust enrichment action. *See Meaney,* 250 Conn. at 523 (reversing judgment in favor of the plaintiff on an unjust enrichment claim where the benefit conferred to defendant was a service that plaintiff "was bound to perform [ ] in accordance with his employment contract" and had been compensated for per the contract's terms); *Hosp. of Cent. Conn. v. Neurosurgical Assocs., P.C.,* 159 Conn. App. 87, at *5-7 (Conn. App. Ct. 2015) (affirming the Superior Court's conclusion that a benefit conferred on the defendant was not unjustly retained because the defendant provided the plaintiff with consideration for the benefit); *see also*

---

[7] This "best efforts" obligation existed explicitly under RPCT's agreement with Plas-Pak. *See* Memo. of Decision on Cross Mots. For Summ. J. 3, ECF No. 130. Because this agreement was a necessary precondition to the agreement between V.O. Baker and RPCT, it formed a basis for their bargain as well.

*Providence Elec. Co. v. Sutton Place, Inc.,* 161 Conn. 242, 246-47 (1971) (finding no legal basis for an unjust enrichment claim where defendant paid its general contractor for the benefit it received and did not claim fraud or collusion); *accord Powerscreen USA, LLC v. D&L Equip., Inc.,* 661 F. Supp.2d 705, 714-15 (W.D. Ky. 2009) (finding that a party to a contract was not unjustly enriched by the other party's "expenditures of effort and knowhow in developing the markets" because such conduct was that party's obligation under the contract to use "best efforts" to promote the sale of the relevant product).

Holding otherwise would inappropriately place this Court in the position of reinventing the business relationship between RPCT and V.O. Baker, which was already negotiated and memorialized in a written contract.  By asking for compensation for services RPCT rendered during the life of its contract with V.O. Baker, it is essentially asking the Court to re-write the agreement.  There is no record evidence that V.O. Baker or RPCT expected their relationship to be defined by anything other than the written contract between them.  Nor is there evidence in the record indicating that either party expected to pay for or be paid, respectively, outside of the terms of the contract, for the benefits that RPCT provided.  Given "the importance of safeguarding the autonomy of the parties to determine their own contract relationships without exposure to the risk of judicial override," courts are not in the business of re-writing agreements post-hoc. *Meaney*, 250 Conn. at 519 (citing *Murray v. ABT Assocs. Inc.,* 18 F.3d 1376, 1378-79 (7th Cir. 1994)); *accord Chesapeake Energy Corp.*, 2015 WL 4191419, at *9 ("[T]he law favors contractual guideposts because a contract makes the

parties the masters of their destiny... [which] will generally result in more voluntary, predictable, efficient, and fair outcomes than the *ex post* application of common-law principles of equity.") (citation omitted).  The Court sees no reason to do so here.

Moreover, allowing an unjust enrichment claim here would place with the Court the very difficult task "of crafting an appropriately constrained judicial remedy."  *Meaney*, 250 Conn. at 519 (citing *Bloomgarden v. Coyer,* 479 F.2d 201, 211 (D.C. Cir. 1973)).  "Contract is superior to restitution as a means of regulating voluntary transfers because it eliminates, or minimizes, the fundamental difficulty of valuation.  Considerations of both justice and efficiency require that private transfer be made pursuant to contract whenever reasonably possible…" *Chesapeake Energy Corp.,* 2015 WL 4191419, at *8 (quoting Restatement (Third) of Restitution and Unjust Enrichment §2, cmt. c (2011)).

RPCT's claim also must fail because the damages it seeks under its "unjust enrichment" theory are no different from the damages the Court has already ruled were too speculative to sustain a contract claim.  Memo. Of Decision on First Mot. for Summ. J. 8-9, ECF No. 130.  Under its breach of contract claim, RPCT sought gross profits, which it labeled "lost profits" and derives from RPCT's expert report provided by Mr. DiGiacomo.  *Id.*; *see also* DiGiacomo Report dated May 16, 2011 at 2, ECF No. 160 (defining "lost profits" as "50% of the profit from the total VO Baker sales" after June 16, 2009).  Under its unjust enrichment theory, it seeks exactly the same figure, "the 50% profit

12

share which Baker has gained and retained" by allegedly removing RPCT from the deal with Plas-Pak.  Opp. Br. 3, ECF No. 238.

As the Court determined in its prior ruling, RPCT has failed to provide non-speculative proof of these damages.  Memo. Of Decision on First Mot. for Summ. J. 8-9, ECF No. 130.  Like a breach of contract claim, a plaintiff must prove damages are not speculative to prevail on an unjust enrichment claim.  *See generally Carrano v. Yale-New Haven Hosp.,* 279 Conn. 622, 650 (2006) ("'Proof of damages should be established with reasonable certainty and not speculatively and problematically… Damages may not be calculated based on a contingency or conjecture.'") (citation omitted); *see also cf. Schirmer v. Souza,* 126 Conn. App. 759, 771-73 (Conn. App. Ct. 2011) (noting in the unjust enrichment context that it is "plaintiffs' burden to prove… that the defendants were benefitted", which includes proof that enables a fact finder to "'make a fair and reasonable estimate'" of the benefit conferred or damages) (citations omitted); *see also Leisure Resort Tech., Inc. v. Trading Cove Assocs.,* No. X06CV000164799S, 2004 WL 1966952, at *6-7 (Conn. Super. Ct. Aug. 4, 2004) (granting summary judgment on an unjust enrichment claim because plaintiff's claimed damages were too speculative because they required the Court to value the impact of negotiations for a deal on the worth of an interest in a partnership that was sold before the deal closed), *aff'd on other grounds* 277 Conn. 21, 31 n.4 (2006) (noting that plaintiff abandoned its unjust enrichment count on appeal).

## IV. CONCLUSION

For all of the foregoing reasons, V.O. Baker's Motion for Summary Judgment, ECF No. 225, is **GRANTED**, and RPCT's unjust enrichment claim is hereby dismissed.

SO ORDERED at Bridgeport, Connecticut this 29th day of September 2015.

                                         /s/ Victor A. Bolden
                                         VICTOR A. BOLDEN
                                         UNITED STATES DISTRICT JUDGE