UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RICHARD PARKS CORROSION
TECHNOLOGY, INC.,
        Plaintiff,

        v.                                                  CASE NO. 3:10-cv-437(VAB)

PLAS-PAK INDUSTRIES, INC., V.O.,
BAKER CO., INC., THOMAS BAKER,
and JASON BAKER,
        Defendants.

**RULING ON MOTIONS IN LIMINE**

This action involves the termination of two contracts concerning the marketing and sale of a patented disposable plastic cartridge system that consumers fill with adhesives and paints. Memo. of Decision on Cross Mots. For Summ. J. 2, ECF No. 130. Defendants Plas-Pak Industries, Inc. ("Plas-Pak") as well as V.O. Baker Company, Inc. ("V.O. Baker"), Thomas Baker, and Jason Baker (collectively the "Baker Defendants") have filed a total of three motions *in limine* to preclude evidence at trial. ECF Nos. 180, 181, and 194. The Court also allowed supplemental briefing on these motions after oral argument was held.

For the following reasons, Plas-Pak's first motion, ECF No. 180, is **GRANTED IN PART** and **DENIED IN PART**; Plas-Pak's second motion, ECF No. 181, is **DENIED**; and the Baker Defendants' motion, ECF No. 194, is **GRANTED**.

I.      **RELEVANT FACTS**

The Court has undertaken a more fulsome summary of undisputed facts in two of its rulings on the parties' summary judgment motions. ECF Nos. 130, 241. Thus, it will only briefly explain the facts relevant for the resolution of these motions.

1

On June 1, 2004, Plaintiff, Richard Parks Corrosion Technology, Inc. ("RPCT"), entered into an agreement with Plas-Pak which granted RPCT the exclusive right to market and sell a paint cartridge system to the United States Navy and marine industry. Memo. of Decision on Cross Mots. For Summ. J. 2, ECF No. 130.  Under this agreement, RPCT had an obligation to use its "best efforts" to promote and sell the paint system.  *Id.*  Incident to the Plas-Pak agreement, RPCT also entered into a sub-license agreement which named V.O. Baker as the "exclusive representative and [ ] distributor" of Plas-Pak's paint cartridge system.  *Id.* at 2-3.  Under this sub-license, RPCT received a royalty on V.O. Baker's sales.  *Id.* at 3.

Beginning in October 2007, Plas-Pak began expressing concerns about low sales numbers and RPCTs marketing efforts.  *Id.* at 3. Ultimately, on April 9, 2009, Charles Frey, CEO of Plas-Pak, sent an e-mail to Richard Parks of RPCT that the agreement was "terminated."  *Id.* at 4-5.  On June 10, 2009, V.O. Baker sent RPCT a letter indicating that it considered its sub-license agreement terminated.  *Id.* at 5.  On October 5, 2010, RPCT entered the "Independent Consulting Agreement" ("ICA") under which Sulzer Mixpac North America ("Sulzer"), one of Plas-Pak's competitors, became RPCT's exclusive paint cartridge supplier to the United States Navy and marine industry.  *Id.* at 3, 5.

In this action, RPCT alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") by all Defendants.[1]  Am. Compl. ¶¶ 99-103, ECF No. 207.  Plas-Pak

---

[1] In its initial Complaint, RPCT also sought damages for breach of contract, tortious interference with the Plas-Pak license agreement by the Baker Defendants, and violation of the covenant of good faith and fair dealing.  Compl. at Counts One, Two, and Three, ¶¶ 54-98, ECF No. 1. These claims were dismissed at summary judgment because the Court found that RPCT could not prove damages to a reasonable certainty.  Memo. of Decision on Cross Mots. For Summ. J. 9, ECF No. 130 (dismissing the breach of contract and the covenant of good faith and fair

2

asserts five counterclaims against RPCT for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent misrepresentation, and violations of CUTPA. Plas-Pak's Am. Countercl. at Counts One-Five, ¶¶32-67, ECF No. 129. V.O. Baker also asserts counterclaims against RPCT for breach of contract, unjust enrichment, estoppel, unfair competition, and violations of CUTPA. V.O. Baker's Am. Countercl. at Counts One-Five, ¶¶69-91, ECF No. 212.

## II. DISCUSSION

"In ruling on a motion *in limine*, the Court makes a 'preliminary determination on the admissibility of the evidence'" and its ruling is "'subject to change when the case unfolds.'" *Murray v. Town of Stratford*, No. 3:11 CV 629 (JGM), 2014 WL 3700982, at *2 (D. Conn. July 25, 2014) (citations omitted). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted). The Court should exclude evidence in resolving a motion *in limine* "only when [it] is clearly inadmissible on all potential grounds." *Ziemba v. Lynch*, No. 3:10-cv-717(SRU)(WIG), 2011 WL 4633117, at *1 (D. Conn. Oct. 4, 2011) (citation omitted); *Romanelli v. Long Island R.R. Co.*, 898 F. Supp.2d 626, 629 (S.D.N.Y. 2012) (citation omitted).

---

dealing claims); Order Granting Suppl. Mot. for Summ. J., ECF No. 146 (dismissing the tortious inference of contract claim against the Baker Defendants). After all summary judgment motions were decided and three motions *in limine* were filed, ECF Nos. 180, 181, and 194, RPCT amended its Complaint and added the claim for unjust enrichment. Am. Compl. ¶¶104-05, ECF No. 207. The Court granted V.O. Baker's Motion for Summary Judgment on this claim on September 29, 2015. Ruling on V.O. Baker's Mot. for Summ. J., ECF No. 241.

3

### A. First Motion *in Limine* Filed by Plas-Pak (ECF No. 180)

In its First Motion *in Limine*, Plas-Pak asks the Court to (i) preclude evidence of RCPT's "CUTPA Disgorgement Damages" at trial, or in the alternative, to (ii) bifurcate the trial of liability and damages. Plas-Pak's First Mot. *In Limine* 1-2, ECF No. 180. Plas Pak also requests an Order (iii) limiting RCPT's recovery to nominal damages. *Id.* The Baker Defendants filed a Memorandum of Law in support of all relief requested in Plas-Pak's First Motion *in Limine*. Baker Defs.' Br., ECF No. 190. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART.**

#### (i) Evidence of "CUTPA Disgorgement Damages"

RPCT currently claims a total of $329,000 in attorney and expert fees under CUTPA, any punitive damages under the same, and $850,263 in "actual damages" or what it calls "CUTPA Disgorgement Damages." Plas-Pak's First Motion *in Limine*, Ex. A, Pl.'s Updated Damage Analysis dated April 15, 2013, ECF No. 180-1. RPCT defines its "Disgorgement Damages" as 50% of the profits V.O. Baker earned from packaging and distributing the paint cartridge system, after the agreement between RPCT and the Baker Defendants was terminated in 2009 to the present day. Opp. Br. 2, ECF No. 188. In other words, the "Disgorgement Damages" represent the revenue RPCT would have earned had its agreements with Plas-Pak and V.O. Baker not been terminated. It styles these as "actual damages" under CUTPA. *Id.* at 3-7.

Plas-Pak and the Baker Defendants both argue that these "CUTPA Disgorgement Damages" that RPCT now seeks are "identical" to the lost profit that this Court already ruled RPCT could not prove with reasonable certainty to satisfy its contract-based claims. Plas-Pak's First Mot. *In Limine* 6, ECF No. 180; Baker Defs.' Br.

7-8, ECF No. 190; *see also* Memo. Of Decision on First Mot. for Summ. J. 9, ECF No. 130 (dismissing RPCT's claims for breach of contract and the covenant of good faith and fair dealing).  As such, all Defendants argue that RPCT cannot recover these damages as "actual damages" under CUTPA[2] and should be precluded from introducing evidence of its so-called "Disgorgement Damages" at trial.  *Id.*

RPCT claims that the compensatory damages it now seeks are not lost profits, but rather "damages measured by a restitution standard."  Opp. Br. 3, ECF No. 188.  It argues that restitution may be awarded as "actual damages" under CUTPA and that it should be awarded here in order to disgorge the Baker Defendants of benefits they obtained improperly by opportunistically causing the breach of RPCT's agreement with Plas-Pak and, consequently, its agreement with V.O. Baker.  *Id.*  The Court disagrees and finds that RPCT's "Disgorgement Damages" may not be offered as evidence of "actual damages" under CUTPA.

In a private action brought under CUTPA, "[a]ny person who suffers ascertainable loss of money or property [ ] as a result of the use" of an unfair trade practice is entitled to recover "actual damages," which are compensatory damages. Conn. Gen. Stat. §42-110g(a).  Distinct from these "actual damages," a plaintiff may also seek punitive damages and costs and attorneys' fees, which must be awarded by the Court.  *See* Conn. Gen. Stat. §§42-110g(a), (d), (g); *see also Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 509-10 (1995) (citations omitted).  The focus of Plas-

---

[2] Neither Defendant had the opportunity to address the relevance of RPCT's Disgorgement Damages to its unjust enrichment claim in their initial briefs, as RPCT amended the Complaint after motions *in limine* were filed.  This issue is now moot because the Court has granted summary judgment on that claim.  Ruling on V.O. Baker's Mot. for Summ. J., ECF No. 241.

5

Pak's motion is on the evidence RPCT may use to prove the actual damages aspect of its CUTPA claim.

Under CUTPA, if RPCT did have damages that could be categorized as "restitution," they are recoverable as "actual damages," and, therefore, admissible. *See* Robert M. Langer, John T. Morgan, & David L. Belt, 12 *Connecticut Practice Series: Unfair Trade Practices* § 6.7 & n.7 (2014) (noting that courts have held that restitution may be recovered under CUTPA as "actual damages" and collecting cases that do so); *see also e.g., Bailey Emp't Sys., Inc. v. Hahn*, 545 F. Supp. 62, 73 (D. Conn. 1982) (awarding restitution damages as actual damages under CUTPA); *accord Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F. 2d 672, 681 n.3 (2d Cir. 1985). To the extent that the Defendants rely on cases noting "disgorgement" as a remedy available under punitive damages only, these cases merely note that disgorgement is one of the goals of punitive damages, along with punishment and deterrence. *See e.g., Metcoff v. NCT Grp., Inc.*, 52 Conn. Supp. 363, 380 (Conn. Super. Ct. 2011) ("As a general rule, the aims of punitive damages are punishment, deterrence and profit disgorgement."). They do not preclude the award of damages calculated under a restitution theory as actual damages under CUTPA.

As a matter of law, however, the "Disgorgement Damages" RPCT seeks are not restitution and, therefore, cannot be used as evidence of actual damages under CUTPA. Restitution is the "unmaking of an agreement," which seeks to place the wronged party in the same position that he or she was in prior to the negotiation of the contract. *See Aurigemma v. Arco Petroleum Prods. Co.*, 734 F. Supp. 1025, 1032-33 (D. Conn. 1990) (citing *Kavarco v. T.J.E., Inc.,* 2 Conn.App. 294, 299 (Conn. App. Ct.

6

1984)); *see also e.g., Bailey Emp't Sys., Inc.*, 545 F.Supp. at 73 (finding that "under a restitutionary formula," plaintiff was entitled to what he paid the defendant in order to "enable the courts to reinstate [plaintiff] to his or her status which existed prior to the [contract]").

What RPCT seeks does not achieve this goal, but rather seeks to place it in the position it would have been in had the contract been completed by providing it the revenue it would have been due under the agreement. These are similar to expectation damages, akin to lost profits, rather than restitution.[3] *See* Memo. Of Decision on First Mot. for Summ. J. 8, ECF No. 130 ("Lost profits represent calculations of 'net profits,' which are 'defined as the gross amount that would have been received pursuant to the business less the cost of running the business.'") (quoting *New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.*, No. 3:19-cv-894, 2002 WL 229900, at *13 (D. Conn. Feb. 4, 2002)). Because these so-called "Disgorgement Damages" are substantively the same damages that the Court precluded as unduly speculative in its earlier summary judgment ruling, RPCT cannot use them as evidence of actual damages under CUTPA.[4]

---

[3] If the "Disgorgement Damages" do not reflect estimates of the costs RPCT would have incurred, as V.O. Baker points out in their supplemental brief, they do not even accurately reflect expectation damages or lost profits. V.O. Baker Suppl. Br. 2-3, ECF No. 234. Although it is unclear how the figures were calculated at this time, any measure of expectation damages must be decreased by an estimate of the costs incurred. Memo. Of Decision on First Mot. for Summ J 8-9, ECF No. 130.

[4] In its opposition, RPCT also argues that the evidence of "Disgorgement Damages" is relevant to not just damages, but other triable issues, including liability. Opp. Br. 8-9, ECF No. 188. The Court declines to decide whether this evidence is admissible to address other triable issues and will await an offer of proof from RPCT closer to the time of trial.

**(ii)    Bifurcation**

Second, Plas-Pak argues that bifurcation of liability and damages is appropriate because under CUTPA, punitive damages and "equitable relief," like RPCT's "Disgorgement Damages," must be decided by the Court. The Court does not need to address this latter argument about equitable relief, because of its decision to exclude RPCT's so-called "Disgorgement Damages" theory as probative of actual damages. With respect to the first argument, the Court agrees that punitive damages under CUTPA, including attorney and expert fees, are for the Court to decide. Conn. Gen. Stat. § 42-110g(a) ("In any action brought by a person under this section there shall be a right to a jury trial except with respect to the award of punitive damages under subsection(a) or the award of costs, reasonable attorneys' fees…"). However, a complete bifurcation of liability and damages is unnecessary at this time.

This Court may, at its discretion, order separate trials on liability and damages "[f]or convenience, to avoid prejudice, or to expedite and economize" proceedings. Fed. R. Civ. P. 42(b); *see also ABB Indus. Sys. V. Prime Tech., Inc.*, 32 F. Supp.2d 38, 43 (D. Conn. 1998) (noting that bifurcation is not routinely ordered but that it may be appropriate "'where the evidence offered on two different issues will be wholly distinct'" or where "'litigation of one issue may obviate the need to try another.'") (citations omitted). Plas-Pak has not identified a sufficient reason why it would be more convenient or less prejudicial to try damages and liability entirely separately. This is not to say that the amount of damages which, as a matter of law, are for the Court and not a jury to decide can be decided by a jury; but rather that any issues of liability and damages that can be decided by a jury will be decided by the same jury.

To the extent that this motion is a request for a separate post-trial hearing on punitive damages and attorney and expert fees, that request is granted. *See Carrillo v. Goldberg,* 141 Conn. App. 299, 313-14 (Conn. App. Ct. 2013) (finding that a trial court lacked authority to hold a post-trial hearing on punitive damages because neither party requested bifurcation of liability and damages on this issue); *see also Smith v. Snyder,* 267 Conn. 456, 470-71 (2004) (holding that a "threshold evidentiary showing is a prerequisite to an award of attorney's fees").

### (iii) Nominal Damages Only

Plas-Pak requests that the Court declare that RPCT is only entitled to nominal damages as "actual damages" under CUTPA. The Court dismissed RPCT's claims of breach of contract and of the covenant of good faith and fair dealing because it was not able to prove lost profits to sufficiently certain degree. Memo. Of Decision on First Mot. for Summ. J. 8-9, ECF No. 130. In doing so, it specifically noted that under CUTPA, if RPCT is able to prove liability but not the amount of actual damages incurred, it may be entitled to nominal damages. *Id.* at 10 (citing *Whitaker v. Taylor,* 99 Conn. App. 719, 733 (Conn. App. Ct. 2007)). The Court has also, in this ruling, precluded evidence of "Disgorgement Damages" as actual damages, because they are the same as the "lost profits" that the Court ruled were too speculative to recover. In its recent briefs, RPCT has not indicated that it has a new theory of "actual damages" under its CUTPA claim.

Despite these findings, the Court will deny this request, without prejudice to renewal later.

### (iv) Conclusion

For all of the foregoing reasons, the Court **GRANTS** Plas-Pak's requests to (i) preclude evidence of RPCT's "Disgorgement Damages" from being considered as evidence of "actual damages" under CUTPA. It **DENIES** Plas-Pak's requests (ii) to bifurcate liability and damages proceedings and (iii) to limit the damages RPCT may seek from the jury to nominal damages.

### B. Second Motion *in Limine* Filed by Plas-Pak (ECF No. 181)

Plas-Pak filed its Second Motion *in Limine* asking the Court to preclude RPCT "from offering evidence of any damages beyond October 5, 2010," the effective date of the ICA between RPCT and Sulzer. Plas-Pak's Second Mot. *In Limine* 1, ECF No. 181. Plas-Plak argues that because the agreement between Plas-Pak and RPCT had an exclusivity provision, RPCT could not legally be a party to the ICA and the license agreement between Plas-Pak and RPCT. Since the agreements are mutually exclusive, Plas-Pak argues, RPCT should not be entitled to present evidence of damages after the ICA's effective date. Plas-Pak's motion is **DENIED.**

The fact that a subsequent agreement is inconsistent with a prior breached agreement does not indicate that such a subsequent agreement is inadmissible or irrelevant. Indeed, RPCT correctly notes that such an inconsistency between the two agreements shows that the ICA is potentially relevant to mitigation of damages, if RPCT is not found to be the breaching party.[5] Mitigation of damages does not cut off a party's right to claim damages, but rather reduces the amount of damages it may recover. *See*

---

[5] RPCT's argument that the ICA should not be considered as mitigation of damages is unavailing. The relevant consideration for mitigation is not the structure of the revenue of the contract but whether the contract can be viewed as covering a sufficiently similar area, good or service.

24 Williston on Contracts §64:27 (4th ed. 2015) (defining the so-called "duty to mitigate" as a rule preventing the plaintiff from recovering "those damages that it could have avoided."); see also Preston v. Keith, 217 Conn. 12, 16 n.5 (1991) ("[A] plaintiff's failure to take reasonable actions to minimize damages… serves as a limitation on the amount of damages recoverable.") (citations omitted); 1375 King's Highway, LLC v. Elephant Grp., LLC, No. 095027829, 2012 WL 432506, at *5 (Conn. Super. Ct. Jan. 18, 2012) (explaining that a failure to mitigate damages could only entitle a breaching party to summary judgment if the moving party proved "that had the injured party used reasonable efforts to mitigate its damages, damages would have been reduced to zero.").

Moreover, evidence regarding mitigation is crucial with respect to RPCT's CUTPA claim, as a failure to mitigate damages could result in a failure to prove an unfair trade practice. See generally A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 216 (1990) (holding that to make out a CUTPA claim, a plaintiff must show that the injury it suffered is one it "could not have reasonably avoided"); see also e.g., Leaksealers, Inc. v. Conn. Nat'l Bank, CV 92 0517952, 1995 WL 384611, at *11 (Conn. Super. Ct. June 20, 1995) (striking CUTPA claim because the Court could not determine from the allegations whether plaintiff could have avoided the loss, as required to prove that an unfair trade practice occurred). The Court, therefore, declines to enter an Order precluding RPCT from presenting evidence of its financial status after the effective date of the ICA.

**C. Motion *in Limine* Filed by Baker Defendants (ECF No. 194)**

The Baker Defendants filed a motion *in limine*, asking the Court to exclude the testimony of RCPT's expert witness, Mr. Michael DiGiacomo, at trial. Baker Defs.' Mot. *In Limine,* ECF No. 194. This motion is **GRANTED**.

Mr. DiGiacomo wrote a report opining on the amount of what he calls "lost profits" that RPCT incurred due to the termination of its contracts with Plas-Pak and V.O. Baker. *See* DiGiacomo Report 1, ECF No. 160. This "lost profit" calculation considered only revenue and did not account for expenses incurred by RPCT; the figures derived from the calculation, therefore, represent not net but gross profit. *See* Memo. Of Decision on First Mot. for Summ. J. 8, ECF No. 130. RPCT indicates that Mr. DiGiacomo will testify about three topics: (i) "[a]nalysis of the sales data and computation or the total excess profit realized by Baker Company to the date of the trial (50% of the net profit from the paint program);" (ii) "the future profitability of the paint program"; and (iii) the calculation of a "reasonable discount rate" so that the "net present value" of future profits may be determined. RPCT's Suppl. Br. 5, ECF No. 229. It indicates that Mr. DiGiacomo will provide a supplemental report clarifying these opinions. *Id.* at 7.

The Baker Defendants argue that Mr. DiGiacomo's testimony fails to satisfy the requirements of Federal Rule of Evidence 702 and *Daubert*. They also argue that his testimony would unduly prejudice the jury under Federal Rule of Evidence 403, because the testimony is a "simple" calculation that the jury could accomplish. They also argue that none of these new theories were adequately disclosed to them. Plas-Pak filed a Memorandum of Law supporting the relief requested in the Baker Defendants motion in its entirety. Plas-Pak Br., ECF No. 201.

To introduce expert testimony at trial, its proponent has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant, and reliable. *Izzarelli v. R.J. Reynolds Tobacco Co.*, 806 F.Supp.2d 516, 531 (D. Conn. 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n. 10 (1993)). The Court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (citation omitted); *see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 213-14 (2d Cir. 2009) ("[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith.'") (citation omitted). "Any step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*." *Amorgianos,* 303 F.3d at 267 (emphasis in original) (citations omitted). Lesser criticisms or other contentions that assumptions are "unfounded" go to the weight and not the admissibility of the testimony. *See Zerega Ave. Realty Corp.,* 571 F.3d at 213-14 (citation and internal quotation marks omitted).

In addition to the requirements of Rule 702, expert testimony is also subject to the requirements of Rule 403 and "'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). This inquiry is particularly important in light of the "unique

weight such evidence may have in a jury's deliberations." *Id.* (citing *Daubert,* 509 U.S. at 595). Determinations under both Rules 702 and 403 are left to the discretion of the district court. *See PRL USA Hldgs., Inc. v. U.S. Polo Ass'n, Inc.,* 520 F.3d 109, 119 (2d Cir. 2008) (Rule 403); *United States v. Amuso,* 21 F.3d 1251, 1263 (2d Cir. 1994) (Rule 702).

To show that its expert's testimony is admissible, RPCT must show that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. It must also show that the probative value of Mr. DiGiacomo's proposed testimony outweighs any prejudicial effect under Rule 403. Fed. R. Evid. 403. The Baker Defendants argue that Mr. DiGiacomo cannot satisfy any one of the four Rule 702 criteria. Baker Defs.' Mot. *In Limine* 7, ECF No. 195. They also argue that his testimony would be unduly prejudicial. *Id.* at 8-9. RPCT did not directly address any of these *Daubert* factors in its initial Memorandum of Law opposing this motion[6], but did so in its supplemental brief. Opp. Br., ECF No. 203; RPCT's Suppl. Br., ECF No. 229.

Assuming that Mr. DiGiacomo is appropriately qualified under Rule 702, subsection (a), the Court grants the Baker Defendants' motion to preclude Mr. DiGiacomo's testimony. His proposed testimony on the first topic is excluded, because

---

[6] In its Memorandum opposing the Baker Defendants' *Daubert* Motion, Plaintiff referred the Court to its briefing in opposition to Plas-Pak's First Motion *in Limine*. However, as the Baker Defendants correctly point out, this brief does not address Mr. DiGiacomo's testimony directly, or *Daubert* concerns, and instead justifies RPCT's claim to damages measured by restitution.

14

it represents simple calculations that a lay person could handle.  The remaining testimony is excluded because Mr. DiGiacomo's calculations are based on insufficient facts and an unreliable method and, therefore, would have an unduly prejudicial impact on a jury.

With respect to the first proposed topic, RPCT does provide some indication that Mr. DiGiacomo considered some measure of V.O. Baker's costs in his analysis of their "net profits."  RPCT's Suppl. Br. 4, ECF No. 229; *see also* Ex. A, RPCT's Suppl. Br., ECF No. 229-1.[7]  However, it fails to show how these calculations are more than simple math that a jury could do without the assistance of an expert.  *See United States v. Mulder,* 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'") (citation omitted); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* No. 3:09cv1546 (MRK), 2010 WL 2978289, at *3, 5-6 (D. Conn. Apr. 9, 2010) (excluding an expert's testimony where he did nothing more than "summarize" numbers and simple addition and multiplication to arrive at those numbers, which a jury could do for itself, and noting that allowing such testimony from an expert could mislead the jury).

The remaining testimony calculates damages allegedly due to RPCT.  By his own admission, Mr. DiGiacomo's measure of RPCT's "lost profits" does not include any measure of costs, because he was not asked to consider it.  DiGiacomo Dep. 35:8-36:23, ECF No. 160; RPCT's Suppl. Br., Ex. B, DiGiacomo Dep. 47:9-17, ECF No. 229-2.  RPCT, however, continues to indicate that it will present these calculations as

---

[7] There is no indication that Mr. DiGiacomo considered how removing RPCT from the relationship may have changed V.O. Baker's costs.  This failure seems problematic but not so prejudicial as to warrant the testimony's exclusion alone.

damages to which RPCT is entitled.  RPCT's Suppl. Br. 3, 5, ECF No. 229.  Any calculation of that figure must include a consideration of what costs were or would have been, even if those costs are zero.  *See New Eng. Dairies, Inc.,* 2002 WL at 229900 at *13 (noting that "[n]et profit can be defined as the gross amount that would have been received pursuant to the business less the cost of running the business…") (internal citation and quotation marks omitted).  No case that RPCT cites contradicts this conclusion; even an extrapolation from past profits must consider costs to provide a true net profit figure.

As a result, Mr. DiGiacomo's calculations were not based on his own perception of what was necessary to calculate "lost profits" but rather upon the limited universe of facts counsel asked him to consider.[8]  His calculations are based on insufficient facts and an unreliable methodology, because he did not consider costs in his calculation of "lost profit."  These flaws in Mr. DiGiacomo's methodology are inherently misleading, because he uses a term with a legal definition, in a different way than the law defines it.  The prejudicial nature of his testimony, therefore, cannot be cured properly on cross examination.  Accordingly, the Court must exclude Mr. DiGiacomo's testimony because its probative value is outweighed by its prejudicial effect.  Fed. R. Evid. 403; Fed. R. Evid. 702; *see Arista Records LLC v. Lime Grp. LLC,* No. 06 CV 5936(KMW), 2011 WL 1674796, at *10 (S.D.N.Y. May 2, 2011) (excluding an expert's testimony because he was not qualified and "appears to rely almost entirely on an uncritical review of others' views.") (citation omitted); *see also Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp.2d 558, 582 (S.D.N.Y. 2007) (excluding expert testimony when it used a "severely flawed

---

[8] This finding is consistent with the Court's prior ruling, which dismissed RPCT's contract-based claims because their assertion of lost profits was too speculative.  Memo. Of Decision on First Mot. for Summ. J. 8, ECF No. 130.

methodology" that made its "probative value" substantially outweighed by its "potential to mislead the jury."). Because all aspects of Mr. DiGiacomo's testimony are based on these misleading calculations, none of it may be admitted at trial. *See Amorgianos,* 303 F.3d at 267.

Accordingly, the Baker Defendants Motion *in Limine* is **GRANTED** and the Court hereby excludes Mr. DiGiacomo's report and testimony.

### III.     CONCLUSION

For the aforementioned reasons, Plas-Pak's First Motion *in Limine*, ECF No. 180, is **GRANTED IN PART**, in that RPCT may not offer evidence of "Disgorgement Damages" as proof of actual damages at trial. The remainder of the relief that Plas-Pak requests in its First Motion *in Limine* is **DENIED**. Plas-Pak's Second Motion *in Limine*, ECF No. 181, is **DENIED**. The Baker Defendants' Motion *in Limine*, ECF No. 194, is **GRANTED,** and RPCT is precluded from offering Mr. DiGiacomo's expert testimony and report at trial.

SO ORDERED at Bridgeport, Connecticut this 29th day of September 2015.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE